1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERIK FOX,                                   No. 2:23-cv-1319-KJN

12              Plaintiff,                        ORDER

13        v.                                      (ECF No. 5.)

14   VELOCITY SOLAR POWER, INC., et al.,

15              Defendants.

16

17        Plaintiff alleges multiple claims related to the marketing and construction of an additional

18   structure and the installation of a solar power system on plaintiff's land; plaintiff executed three

19   contracts with defendant Velocity Solar Power, with the remaining defendants acting as alleged

20   agents of Velocity.[1]  (ECF No. 1.)  Defendants now move to compel arbitration based on

21   language in the contracts.  (ECF No. 5.)  Plaintiff maintains these contracts were rescinded under

22   California law as illegal home solicitation contracts and are unconscionable.  (See ECF No. 9.)

23   Defendants dispute plaintiff's rescission contentions and maintain, regardless, that the Federal

24   Arbitration Act preempts state law, as well as that the contracts delegate the issue of arbitrability

25   to the arbitrator.  (ECF No. 10.)

26        For the reasons stated below, this matter is sent to arbitration.

27   _____

28   [1] This case proceeds before the undersigned on the consent of all parties, pursuant to 28 U.S.C.
     § 636(c).  (ECF Nos. 9, 11, 12, 15.)

1

1

### General Factual Background

2          In August of 2022, plaintiff hired Velocity to construct a freestanding building on his

3  property (living space for his elderly mother), to provide a solar energy system, and to install that

4  energy system on the building.  (ECF No. 1 at ¶¶ 25-35.)  Velocity and plaintiff entered three

5  separate contracts: one for construction of the building (the "General Contract"), one for the sale

6  of the solar system (the "Solar Contract"), and one for install of the solar system (the "Installation

7  Contract").  (Id. at ¶¶ 52-53 and Exs. D, F, and G.)

8          Excavation work for the new building began a month later.  (Id. at ¶ 56.)  However,

9  problems and disputes between plaintiff and Velocity quickly arose and continued through April

10  of 2023.  (Id. at ¶¶ 57-80.)  This resulted in plaintiff's attempt to rescind all his contracts with

11  Velocity.  (Id. at ¶ 80.)  Velocity disputed the validity of the rescission, leading plaintiff to file

12  this lawsuit.

13          ### Procedural Background

14          On May 23, 2023, plaintiff filed suit in Placer County Superior Court, asserting 16 claims

15  against defendants Velocity Solar Power, Inc; an Idaho corporation; Velocity Solar Power

16  Installations, LLC, an Idaho LLC; as well as Darin Dowd, Jennifer Dowd, Ron Riisager, Dana

17  Riisager, Emmett Edward Wyrick, Erika Wyrick, Joe Loomis, Molly Loomis, Heather Silvis,

18  Granite Bay Excavating, Inc., a California corporation; and American Contractors Indemnity Co.,

19  a California corporation.  (ECF No. 1-1.)  Plaintiff alleges claims under the Racketeer Influenced

20  and Corrupt Organizations Act (18 U.S.C. § 1961(c)); as well as fifteen contract- and

21  misrepresentation-style claims under California law.  (Id.)  Defendants answered and removed to

22  this court on federal question grounds.  (ECF No. 1.)

23          Approximately one month later, defendants moved to compel arbitration of all claims in

24  the complaint against the "Velocity defendants" (all defendants save Granite Bay and American

25  Contractors).  (ECF No. 5.)  Plaintiff opposed, defendant replied, the case was reassigned to the

26  undersigned, and the court took the matter under submission without a hearing pursuant to Local

27  Rule 230(g).  (ECF Nos. 8, 10, 15, 20.)  Plaintiff then requested judicial notice, which defendants

28  opposed.  (ECF Nos. 22, 24.)

1    **Legal Standards**

2         "[T]he federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the

3    allocation of authority between courts and arbitrators."  Cox v. Ocean View Hotel Corp., 533

4    F.3d 1114, 1119 (9th Cir. 2008); see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740,

5    1742 (2011) (noting that the FAA represents "a liberal federal policy favoring arbitration [], and

6    the fundamental principle that arbitration is a matter of contract").  "[T]he FAA limits courts'

7    involvement to determining '(1) whether a valid agreement to arbitrate exists and, if it does,

8    (2) whether the agreement encompasses the dispute at issue.'"  Id.  If a valid agreement exists,

9    "the FAA specifically directs federal district courts to stay proceedings and compel arbitration of

10   'any issue referable to arbitration under an agreement in writing for such arbitration.'"  Ziober v.

11   BLB Res., Inc., 839 F.3d 814, 817 (9th Cir. 2016) (quoting 9 U.S.C. § 3); see also 9 U.S.C. § 4

12   (allowing a party to an arbitration agreement to petition a district court for an order directing

13   arbitration).

14        Additionally, parties can agree to expressly delegate any gateway issues to an arbitrator, in

15   which case an arbitrator, rather than a court, must decide the arbitrability of the dispute.  Brennan

16   v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks and citation

17   omitted).  If the parties delegate the threshold issues to an arbitrator, the FAA leaves no place for

18   the exercise of discretion by a district court, but instead mandates that the district court direct the

19   parties to proceed to arbitration on those issues.  See Brennan, 796 F.3d at 1130; see also, e.g.,

20   Gillette v. First Premier Bank, 2013 WL 3205827, at *2 (S.D. Cal. June 24, 2013) (explaining

21   that "[g]iven the parties' agreement to arbitrate gateway issues of arbitrability, there is actually

22   very little here for the Court to decide" and compelling arbitration as to all gateway issues);

23   Roszak v. U.S. Foodservice, Inc., 628 Fed. Appx. 513, 514 (9th Cir. 2016) (affirming order

24   compelling arbitration because "the parties incorporated the [AAA] rules into their agreement and

25   therefore agreed to arbitrate the question of arbitrability."); Bank of America, N.A. v. Michiletti

26   Family P'ship, 2008 WL 4571245, at *6 (N.D. Cal., Oct. 14, 2008) (where parties agreed to

27   arbitrate the issue of arbitrability, the court was divested of its authority and compelled

28   arbitration).  To make this determination, the court must analyze the underlying contract to decide

whether the parties have "clearly and unmistakably" committed the question of arbitrability to the arbitrator.  Brennan, 796 F.3d at 1130 (cleaned up).  Parties' incorporation of the American Arbitration Association Arbitration Rules ("AAA Rules") into an agreement constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  Id.

Fundamentally speaking, a party can only be compelled to arbitrate a dispute if they agreed to submit that dispute to arbitration.  AT&T Techs., Inc. v. Comm. Workers of Am., 475 U.S. 643, 648-49 (1986).  "[A] party may challenge the validity or applicability of [an] arbitration provision by raising the same defenses available to a party seeking to avoid the enforcement of any contract" under the applicable state law.  Cox, 533 F.3d at 1121 (citations omitted); see also 9 U.S.C. § 2 (providing that contractual arbitration clauses are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

"Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable."  Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000)); see also Concepcion, 131 S. Ct. at 1746 (noting that because California's unconscionability doctrine is applicable to all contracts, an unconscionable arbitration agreement will likewise be unenforceable under the FAA).  The two components operate on a sliding scale where greater evidence related to procedural unconscionability lessens the need for evidence of substantive unconscionability, and vice versa.  Id.  "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Kilgore, 718 F.3d at 1058.

**Analysis**

First, the court finds the FAA applies here, as this matter concerns contracts "evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2.  Plaintiff is a California citizen and the work was to be done at his home in California, and defendant Velocity Solar Power is alleged to be a citizen of Idaho which supplies projects from outside California.  (See ECF No. 1 at ¶¶ 1-3.)

Second, the agreement "clearly and unmistakably" intended to delegate arbitrability of

1   any dispute arising under the contracts to the arbitrator, and such a decision was not "wholly

2   groundless."  See Brennan, 796 F.3d at 1130.  The General Contract's arbitration provision states:

3           Any dispute arising from or related to the performance of the work,
    or the interpretation of this Agreement, shall be decided by

4           arbitration under the Rules of the American Arbitration Association
    (AAA), or Judicial Arbitration and Meditation Services, Inc.

5           (JAMS), and judgment may be entered on the award.

6   (Id. at Ex. D, p. 75 of 145.)[2]

7           The rules for both AAA and JAMS grant the arbitrator the authority to rule on the

8   arbitrability of the claims.  See American Arbitration Association, Commercial Arbitration Rules

9   and Mediation Procedures R-7(a), 13 adr.org/sites/default/files/Commercial%20Rules.pdf ("The

10  arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

11  with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability

12  of any claim or counterclaim."); JAMS Comprehensive Arbitration Rules & Procedures, Rule

13  11(b), www.jamsadr.com/rules-comprehensive-arbitration ("Jurisdictional and arbitrability

14  disputes, including disputes over the formation, existence, validity, interpretation or scope of the

15  agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall

16  be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine

17  jurisdiction and arbitrability issues as a preliminary matter.").  Given these provisions, it is for the

18  arbitrator to decide the arbitrability of the disputes in question, as well as whether the contracts

19  are subject to rescission as plaintiff contends.  Brennan, 796 F.3d at 1130 ("The Ninth Circuit has

20  explicitly held that incorporation of the AAA rules can constitute clear and unmistakable

21  delegation of the arbitrability question.").

22

23  [2] The court focuses on the General Contract because it appears this is the only contract acted
    upon.  Given that the case will be stayed pending the arbitrator's decision on the arbitrability of

24  the dispute under the General Contract, the court's analysis ends here.  However, as defendants
    note, the Solar Installation Contract also contains an arbitration provision, which states:

25  "8.5. … Any dispute (including whether the claims asserted are subject to arbitration) shall be
    referred to and finally determined by arbitration in accordance with the American Arbitration

26  Association (AAA) rules (the Rules) and shall be administered by a local office of AAA… The
    dispute(s) shall be submitted to a single arbitrator chosen by the parties or selected by the parties

27  from a list of potential arbitrators provided by the AAA… The arbitration award shall be final and
    binding upon the parties without appeal or review."  (ECF No. 1 at Ex. G, p. 126 of 145.)

28

Plaintiff also briefly argues unconscionability.  However, plaintiff primarily does so only by attacking defendants' choice in the briefing of the particular JAMS and AAA rules, noting that the "Actual AAA Rules only permits the Commercial Rules to be the default rules when the delegation provisio states so."  (ECF No. 8 at 17.)  But as defendants note, other of AAA's and JAMS's rules contain similar delegation provisions.  See AAA Construction Industry Arbitration Rules and Mediation Procedures, R-9(a), 18; JAMS Construction Arbitration Rules, Rule 11(b). Plaintiff's remaining broad-stroke arguments do not otherwise meet his burden to show unconscionability.  Bielski v. Coinbase, Inc., 87 F.4th 1003, 1013 (9th Cir. 2023) (burden to avoid arbitration under § 2 belongs to the opposing party); see also, e.g., Peng v. First Republic Bank, 219 Cal. App. 4th 1462 (2013) (noting that a failure to include the AAA rules may not, by itself, support a finding of procedural unconscionability, or only adds "a bit" to other existing unconscionability factors).

Finally, given these findings, plaintiff's request for judicial notice of California statutes, case law, and portions of the contracts in the exhibits is denied as irrelevant and otherwise an improper attempt to submit a disfavored surreply.

## **ORDER**

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's request for judicial notice (ECF No. 22.) is DENIED;

2.  Defendants' motion to compel arbitration (ECF No. 5) is GRANTED;

3.  Plaintiff's claims are stayed pending a determination of their arbitrability by an arbitrator selected by the Parties pursuant to the arbitration agreements between Plaintiff and Velocity Solar Power, Inc.; and

4.  If the arbitrator selected by the parties finds any or all of Plaintiff's claims to be arbitrable, Plaintiff may pursue those claims only in arbitration and any claims the arbitrator finds not to be arbitrable are stayed.

Dated:  February 6, 2024

fox.1319

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE